# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **SILVESTER CRUZ RUEDA,** | § | |
| | § | |
| *Petitioner,* | § | |
| | § | |
| **v.** | § | **No. 3:25-CV-00603-LS** |
| | § | |
| **CHARISMA EDGE, WARDEN FCI LA TUNA,** | § | |
| | § | |
| | § | |
| *Respondent.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Silvester Cruz Rueda, Federal Prisoner Number 70959-510, challenges his sentence's execution through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241.[1] The Court denies his petition.

## I.     BACKGROUND.

Rueda is a 46-year-old prisoner confined at the La Tuna Federal Correctional Institution in Anthony, Texas,[2] which is within this Court's jurisdiction. His projected release date is December 21, 2029.[3] On April 24, 2023, law enforcement agents intercepted Rueda's telephone conversation concerning a fentanyl transaction with a person in Artesia, New Mexico.[4] After Rueda finished his call, he asked a co-conspirator to accompany him to Artesia. Rueda picked up the fentanyl and gave it to his co-conspirator to hide in her bra. Police stopped Rueda and his co-conspirator in

---

[1] ECF No. 1, at 1.
[2] *See Find an Inmate*, Fed. Bureau of Prisons, www.bop.gov/inmateloc (search for Reg. 70959-510) (last visited Dec. 16, 2025).
[3] *Id.*
[4] Plea Agreement, *United States v. Rueda*, No. 5:23-cr-01109, at 5 (D.N.M. Oct. 31, 2024), Dkt. No. 41.

Eddy County, New Mexico with l15.18 net grams of fentanyl. Police "also found three firearms in the vehicle,"[5] which Rueda admitted belonged to him.

Rueda pled guilty to an indictment charging him with one count of conspiracy to distribute more than 40 grams of fentanyl in violation of 21 U.S.C. § 846, and a second count of possession with intent to distribute more than 40 grams of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and aiding and abetting in violation of 18 U.S.C. § 2.[6]

Rueda alleges that Respondent Charisma Edge has not properly calculated his "Good Time Credits, First Step Act Credits and Second Chance Credits," in determining his release date.[7] He claims that he is entitled to First Step Act Credits for the time he spent in custody between his arrest and conviction.[8] He further claims that he has not yet received Second Chance Act "credits," which he argues would allow him to spend up to 365 days in a residential reentry center and six months in home confinement.[9] The petition fails to identify any error in the calculation of Rueda's Good Time Credits.

Rueda also asserts that he is not required to exhaust his administrative remedies before he pursues his claim because this action involves "unlawful and illegal imprisonment in violation of the Constitution and laws of the United States."[10] He seeks an order mandating that Edge "provide all Good Time, First Step Act and Second Chance Act Credits" to which he is entitled.[11]

---

[5] *Id.*

[6] *Id.* at 2.

[7] ECF No. 1, at 1.

[8] *Id.*

[9] *Id.* at 2–3.

[10] *Id.* at 5. *But see Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) ("[T]his court has determined that a § 2241 petitioner 'must first exhaust his administrative remedies through the Bureau of Prisons.'" (quoting *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990))).

[11] ECF No. 1, at 5.

## II.    LEGAL STANDARD.

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus."[12] A prisoner may attack "the manner in which a sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241.[13] To prevail, a prisoner must show that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."[14]

As a preliminary matter, however, a reviewing court must determine whether the petitioner properly raised a claim in the § 2241 petition. "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."[15]

## III.    ANALYSIS.

### A.    *First Step Act.*

Rueda claims he is entitled to First Step Act Credits for the time he spent in custody between the date of his arrest on August 1, 2023, and October 30, 2025.[16] The First Step Act ("FSA") creates incentives to encourage prisoners to participate in evidence-based recidivism reduction ("EBRR") programs and productive activities ("PAs").[17] It gives qualifying prisoners the opportunity to earn ten days of FSA Earned Time Credits ("FTCs") for every 30 days of successful participation in EBRR programs and PAs.[18] It allows qualifying offenders "at a

---

[12] *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).

[13] *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000).

[14] 28 U.S.C. § 2241(c)(3).

[15] Rules Governing Section 2254 Cases in the U.S. Dist. Cts. & Rules Governing Section 2255 Proceedings for the U.S. Dist. Cts. R. 4 (Dec. 1, 2019); *see also id.* R. 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition . . . .").

[16] ECF No. 1, at 1.

[17] 18 U.S.C. § 3632(d).

[18] *Id.* § 3632(d)(4)(A)(i).

minimum or low risk for recidivating" to earn an additional five days of FTCs if they do not increase their risk levels over two consecutive assessments.[19] Qualifying inmates can apply FTCs toward pre-release community-based placement in a residential reentry center, toward home confinement,[20] or, at the Director's discretion, toward early release to supervision.[21]

The FSA lists two types of fentanyl convictions that disqualify a prisoner for FTCs.[22] The first is when the prisoner "was an organizer, leader, manager, or supervisor of others in the [fentanyl] offense, as determined under the guidelines."[23] The second is when the prisoner is serving a sentence under 21 U.S.C. § 841(b)(1)(A)(vi) for a fentanyl conviction involving 400 grams or more of a mixture containing a detectable amount of fentanyl, or under § 841(b)(1)(B)(vi) for a fentanyl conviction involving 40 grams or more of a mixture containing a detectable amount of fentanyl.[24]

"Conviction" refers only to what "the defendant [was] convicted of" and not "what the defendant had actually done."[25] Because Congress predicated disqualifying prisoners from accruing FTCs based "on convictions, not conduct,"[26] the Court looks to the offense of conviction, not to the particulars of the prisoner's behavior. Rueda was sentenced under 21 U.S.C. 841(b)(1)(B)(vi) for both counts of conviction[27] so he is statutorily disqualified from earning FTCs.[28]

---

[19] *Id.* § 3632(d)(4)(A)(ii).

[20] 18 U.S.C. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c).

[21] 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

[22] 18 U.S.C. § 3632(d)(4)(D).

[23] *Id.* § 3632(d)(4)(D)(lxviii)(II).

[24] *Id.* § 3632(d)(4)(D)(lxvi).

[25] *Mathis v. United States*, 579 U.S. 500, 511 (2016) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

[26] *Mellouli v. Lynch*, 575 U.S. 798, 805 (2015).

[27] *See* 21 U.S.C. § 841(a)–(b).

[28] 18 U.S.C. § 3632(d)(4)(D); *see also* 28 C.F.R. § 523.42(a) ("An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).").

### B.       Second Chance Act.

Petitioner also complains that he has not received Second Chance Act "credits," which he argues would allow up to 365 days in a residential reentry center and six months in home confinement.[29] The Second Chance Act authorizes the Bureau of Prisons ("BOP"), to the extent practicable, to place inmates nearing a sentence's end in pre-release community confinement.[30] Pre-release custody may include community correctional facilities, such as a residential reentry center, or home detention.[31] The statute also requires the BOP to individually assess prisoners for placement in various facilities consistent with five factors set forth in 18 U.S.C. § 3621(b).

Even if the BOP granted Rueda pre-release custody, it would not be for the eighteen-month period his seeks because pre-release custody is "not to exceed 12 months."[32] Placement in home detention can cover ten percent of the inmate's term of imprisonment or six months, whichever is shorter.[33] But "[t]he 6 months of home confinement is not additional to the 12 months of prerelease custody."[34] The statute authorizes twelve months maximum of pre-release custody in a residential reentry center or a combination of a residential reentry center and home detention.[35]

More importantly, the statute requires the BOP to consider whether placing an inmate in pre-release custody is practicable. It does not require the BOP to make the placement. The BOP is responsible for "designat[ing] the place of the prisoner's imprisonment."[36] So the BOP—not a court—is the proper place to request placement in a residential reentry center or home detention.[37]

---

[29] ECF No. 1, at 2–3.
[30] 18 U.S.C. § 3624(c)(1).
[31] Id. §§ 3624(c)(1)–(2); 28 C.F.R. § 570.20.
[32] 18 U.S.C. § 3624(c)(1).
[33] Id. § 3624(c)(2); 28 C.F.R. § 570.21.
[34] Guess v. Werlinger, 421 F. App'x 215, 217 (3d Cir. 2011).
[35] 18 U.S.C. § 3624(c)(1).
[36] 18 U.S.C. § 3621(b).
[37] United States v. Sneed, 63 F.3d 381, 388 n.6 (5th Cir. 1995) ("[S]uch requests are properly directed to the Bureau of Prisons. . . . [The] Bureau of Prisons has the authority to 'place a prisoner in home confinement.'" (quoting 18 U.S.C. § 3624(c))).

Release from institutional custody to a residential reentry center or home detention "is a change in conditions of confinement and not cognizable under § 2241."[38] Therefore, a claim for pre-release custody in a residential reentry center or home confinement is not a cognizable habeas claim.[39] The Second Chance Act does not guarantee Rueda a particular amount of time in a halfway house or home confinement. Indeed, it does not guarantee that the BOP will place Rueda in pre-release custody at all.[40]

## IV.    CONCLUSION.

It appears from the face of Rueda's petition that he cannot show that he is in custody in violation of the Constitution or laws or treaties of the United States. Consequently, he is not entitled to § 2241 relief. The Court **DENIES** the petition [ECF No. 1] and **DISMISSES** this action with prejudice. The Clerk shall close the case.

**SO ORDERED**.

**SIGNED** and **ENTERED** on December 24, 2025.

**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**

---

[38] *Maldonado v. Rule*, No. 4:24-cv-0971, 2025 WL 476256, at *2 (N.D. Tex. Feb. 11, 2025) (citing *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) ("[Petitioner]'s claim involves his conditions of confinement and is more properly brought as a *Bivens* action.")).

[39] *See Mosley v. Reiser*, No. 3:21-cv-394, 2022 WL 16572029, at *2 (S.D. Miss. Nov. 1, 2022), *aff'd*, No. 22-60625, 2023 WL 3947169 (5th Cir. June 12, 2023).

[40] *See Graves v. Hijar*, No. EP-24-cv-65, 2024 WL 2120258, at *4 (W.D. Tex. May 9, 2024) ("[U]nder the applicable statutory scheme, the Director retains the *discretion* to determine whether a prisoner will . . . be placed in a community corrections facility or home confinement."); *Candrick v. Carr*, No. 4:21-cv-994, 2021 WL 6617671, at *1 (N.D. Tex. Dec. 3, 2021) ("'[N]othing in the Second Chance Act or § 3621(b) entitles [Petitioner] or any other prisoner to a guaranteed placement' in a [Residential Reentry Center]." (quoting *Creager v. Chapman*, No. 4:09-cv-713, 2010 WL 1062610, at *3 (N.D. Tex. Mar. 22, 2010))); *Crowe v. Fed. Bureau of Prisons*, No. 24-cv-3582, 2025 WL 1635392, at *21 (D.D.C. June 9, 2025) ("§ 3632(d)(4)(C) does not displace the statutory discretion that the BOP has to designate a place of imprisonment.").